**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

KYLE FELDMAN, on behalf of himself and all others similarly situated,

Plaintiff

vs

STAR TRIBUNE MEDIA COMPANY LLC

Defendant

_____

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kyle Feldman, by and through his attorneys, for his Class Action Complaint against Defendant Star Tribune Media Company LLC, alleges and states as follows:

**INTRODUCTION**

1. Plaintiff, on behalf of himself and all others similarly situated, brings this class action in relation to Defendant's disclosure of Plaintiff's personally identifiable information ("PII") without Plaintiff's consent.

2. Plaintiff is a subscriber of Defendant's website, startribune.com (the "Website"), which offers, *inter alia*, a wide array of video content.

3. When Plaintiff watched videos on Defendant's Website, Plaintiff's PII was shared with Facebook without notifying Plaintiff and without his consent.

4. Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") each time it knowingly disclosed Plaintiff's PII to Facebook without consent.

5. Defendant is liable to Plaintiff and the Class for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, attorneys' fees and costs.

1

## PARTIES

6. Plaintiff Kyle Feldman is an individual that is over 18 years old and a citizen of the State of Minnesota. Mr. Feldman is a subscriber of Defendant's Website and watched videos on the Website.

7. Defendant Star Tribune Media Company LLC is a Delaware corporation with its principal place of business at 650 3rd Ave S, suite 1300, Minneapolis, Minnesota 55488. Defendant developed, maintains, owns, and/or operates the Website.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of Minnesota, its principal place of business is Minnesota, and much of the violative conduct complained of herein originated or occurred in this District.

11. Further, Defendant's Terms of Use specify jurisdiction and venue as the federal and state courts of Minnesota.[1]

---

[1] https://www.startribune.com/startribune-com-terms-of-use/217991401/?refresh=true (accessed June 30, 2022); see clause 16.

## GENERAL ALLEGATIONS

### Defendant's Website and Facebook Pixel

12. Defendant is a media publisher that developed, owns, and/or operates the Website, startribune.com, which receives millions of visits per year.

13. In addition to written articles, the Website provides a wide array of video content.

14. Defendant has over 100,000 subscribers who, *inter alia*, watch videos on the Website.

15. To become a subscriber, individuals create a profile using their Facebook account and/or by providing other PII, such as their name, address, phone number, and email address.

16. Facebook "require[s] people to connect on Facebook using the name that they go by in everyday life",[2] such that a person can be personally identified by their Facebook account.

17. When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

18. FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile. Accordingly, FIDs are PII.

19. When someone becomes a subscriber to Defendant's Website, they receive recurring emails from Defendant with links to articles and videos published to the Website.

20. Defendant monetizes its Website by, among other things, knowingly collecting and disclosing its subscribers' PII to Facebook, including data that personally identifies subscribers and the videos they view.

21. Defendant's Website uses a code analytics tool called "Facebook Pixel", which was implemented at the discretion of Defendant.

---

[2] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/
(accessed June 30, 2022).

22. Facebook Pixel tracks the actions of Website visitors (subscribers), such as the pages a visitor views and the content they view.

23. When someone watches a video on Defendant's Website, the video name and the viewer's FID are simultaneously sent to Facebook via Facebook Pixel.

24. For example, this occurs when someone visits Defendant's Website and clicks on the article, "NASA administration downplays Russian comments", which includes a video:



25. Once a visitor clicks on this article, the video name and viewer's FID, which is represented by the "c_user" cookie, are sent to Facebook:

```
:authority: www.facebook.com
:method: GET
:path: /tr/?id=1685197625068892&ev=PageView&dl=https%3A%2F%2Fvideo.startribune.com%2Fnasa-administrator-downplays-russian
-comments%2F600157399%2F&rl=https%3A%2F%2Fvideo.startribune.com%2F&if=false&ts=1647884244961&sw=1536&sh=864&v=2.9.57&r=s
table&ec=0&o=30&fbp=fb.1.1647876253095.317298121&it=1647884243174&coo=false&rqm=GET&dt=mc2f0chukab5qi3yfjqig5ydo5y4gd5
i
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7
cookie: sb=1EIzYqp8fe30Zx1mHulpCV9M; datr=1EIzYj-T6CITlw5Vlg8BN-wF; locale=en_US; c_user=10006552172████; usida=eyJ2ZXIiO
jEsImlkIjoiQXI5M2M3ZTh2dmlreCIsInRpbWUiOjE2NDTkwODJ9; dpr=1.25; xs=22%3AmMawU85k5o_gLQ%3A2%3A1647526674%3A-1%3A15115%
3A%3AAcVEmUEmn-aSW08tf-pMtYOcdNpBt40-bbB5Vv_swA; fr=088nRGbUCCeXinC79.AWVdekdeNwBBTgXeZZPuzRV7GxE.BiOKkH.Qm.AAA.0.0.BiOK
kH.AWV_3Hi6FTo
referer: https://video.startribune.com/
sec-ch-ua: " Not A;Brand";v="99", "Chromium";v="99", "Google Chrome";v="99"
sec-ch-ua-mobile: ?0
sec-ch-ua-platform: "Windows"
sec-fetch-dest: image
sec-fetch-mode: no-cors
sec-fetch-site: cross-site
user-agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/99.0.4844.51 Safari/5
```

26. The "PageView" component of Facebook Pixel discloses to Facebook the URL that a viewer has accessed (e.g. "video.startribune.com%2:nasa-administrator-downplays-russian-comments").

27. With the PageView data, someone can simply enter that URL into a browser and they will know what video a person accessed/watched.

28. The "c_user" cookie that is transmitted by Facebook Pixel contains a viewer's unencrypted FID.

29. A Facebook profile can be easily identified and viewed by appending an FID to the end of "Facebook.com", such that a person can be identified by their FID.

30. When PageView data and an FID are simultaneously disclosed, the video material accessed by a specific individual can be determined.

31. Defendant knew that PageView data and FIDs are simultaneously disclosed by Facebook Pixel.

32. Defendant also knew that such data in combination identifies subscribers and the videos they watched.

33. Defendant did not obtain the consent of Website visitors to disclose their PII or the video content they view.

34. Visitors to Defendant's Website are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the video content they view.

35. The disclosure of visitors' PII and/or the video content they view is not incident to the ordinary course of business of Defendant (i.e. it is not for debt collection, order fulfillment, request processing, or the transfer of ownership).

36. The surreptitious disclosure of PII paired with the name of video content an individual views is an outrageous invasion of privacy and would be offensive to a reasonable person.

## The Video Privacy Protection Act

37. In recognition of the outrageous nature of such invasions, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

38. The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

39. Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…" 18 U.S.C. § 2710(a)(4).

40. An entity that provides videos via streaming is a video tape service provider under the VPPA.

41. Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

42. Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

43. Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, *inter alia*, statutory damages in an amount not less than $2,500, punitive damages, attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## PLAINTIFF/PROPOSED CLASS REPRESENTATIVE

44. Plaintiff has had a Facebook account since 2009, which he is perpetually logged into.

45. Plaintiff has been a subscriber of Defendant since January 2011.

46. To become a subscriber of Defendant, Plaintiff provided Defendant with his name, Facebook account, and/or email address.

47. Plaintiff's Facebook profile and his email address contain his name, whereby Plaintiff can be personally identified by that information.

48. Since becoming a subscriber, Plaintiff has regularly watched videos on Defendant's Website using the same device and/or browser in which he is logged into his Facebook account.

49. Each time Plaintiff watched a video on the Website, Defendant simultaneously disclosed Plaintiff's FID and the name of the video/content that he viewed to Facebook via Facebook Pixel.

50. This paired information personally identifies Plaintiff and the video material that he requested, obtained, accessed, and/or watched on Defendant's Website.

51. Plaintiff did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff's consent in a form separate and distinct from other legal obligations.

52. Defendant did not provide Plaintiff with an opportunity to withdraw from the disclosure of his PII.

53. Defendant's disclosure of Plaintiff's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ALLEGATIONS

### A. Definition of the Class

54. Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All persons in the United States who have a Facebook account, subscribed to startribune.com, and watched one or more videos on that Website.**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

55. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

   a) The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

   b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

   c) Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d) The claims of the representative party are typical of the claims of the Class;

    e) A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    g) The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

    h) There are no unusual difficulties foreseen in the management of this class action; and

    i) Plaintiff, whose claims are typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

56. There are thousands of individuals who are subscribers of Defendant and have watched videos on Defendant's Website. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

**C. Commonality**

57. Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

    a) Whether Defendant collected PII of Class Members who visited its Website;

    b) Whether Defendant disclosed PII of Class Members who watched videos on its Website;

    c) Whether Defendant's disclosure was made knowingly;

    d) The nature and extent of PII disclosed;

    e) How PII was disclosed and to whom;

    f) Whether Defendant's Website obtains informed written consent before disclosing PII of subscribers;

g) Whether Defendant's Website provides a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis; and

h) Whether the disclosures of Class Members PII warrants punitive damages.

**D. Typicality**

58. Plaintiff has the same interests in this matter as all other members of the Class and his claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

59. The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of PII by Defendant without consent.

60. All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

**E. Adequacy of Representation**

61. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and he does not have interests adverse to the Class.

62. Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

### F. Class Treatment is the Superior Method of Adjudication

63. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

   c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

   d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

   f) The Plaintiff seeks relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

   g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   h) The proposed class action is manageable.

## CAUSE OF ACTION I

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710

64. Plaintiff restates all allegations of this Complaint as if fully restated herein.

65. Defendant, through its Website, is engaged in the business of delivering audio visual materials (e.g. videos) to the Plaintiff and Class in multiple states and across state borders, thus Defendant is a "video tape service provider" under the VPPA.

66. The Plaintiff and Class are consumers under the VPPA because they are subscribers of Defendant, a video tape service provider, and have watched videos on Defendant's Website.

67. When the Plaintiff and Class Members watched videos on Defendant's Website, Defendant knowingly disclosed their FIDs and the name of the video/content that they viewed to Facebook via Facebook Pixel.

68. The disclosed information is PII because Facebook and anyone with access to that information can personally identify the Plaintiff and Class Members, as well as the video content that each of those respective individuals viewed.

69. The Plaintiff and Class did not consent to Defendant disclosing their PII.

70. Defendant did not provide an opportunity for the Plaintiff and Class to withdraw from the disclosure of their PII.

71. Defendant's disclosure of the Plaintiff's and Class' PII was not in the ordinary course of business.

72. Defendant is liable to the Plaintiff and Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

- A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

- B. Designation of the Plaintiff as representative of the proposed Class and designation of his counsel as Class counsel;

- C. Judgment in favor of the Plaintiff and Class Members as against the Defendant;

- D. An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

E. An award of injunctive relief prohibiting Defendant from disclosing the PII of its subscribers without consent and in accordance with the VPPA;

F. An award of attorneys' fees and costs, including pre- and post-judgement interest;

G. An Order holding that Defendant's disclosure of the Plaintiff's and Class' PII without consent was in violation of the VPPA;

H. Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Date: July 7, 2022

Respectfully submitted,

*/s/ Nathaniel J. Weimer*

**TEWKSBURY & KERFELD, P.A.**
Nathaniel J. Weimer
88 South Tenth Street, Suite 300
Minneapolis, MN 55403
T: (612) 334-3399
F: (612) 334-5787
E: NWeimer@TKZ.com

Steven D. Liddle*
Nicholas A. Coulson*
Lance Spitzig*
**Pro hac vice* application pending
**LIDDLE SHEETS COULSON PC**
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
E: sliddle@lsccounsel.com
E: ncoulson@lsccounsel.com
E: lspitzig@lsccounsel.com

Don Bivens
**DON BIVENS PLLC**
Scottsdale Quarter

13

15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
T: (602) 708-1450
E: don@donbivens.com

*Attorneys for the Plaintiff and Putative Class*