UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kyle Feldman, *on behalf of himself and all others similarly situated*,

        Plaintiff,

v.

Star Tribune Media Company LLC,

        Defendant.

File No. 22-cv-1731 (ECT/TNL)

**OPINION AND ORDER**

---

Nicholas Alexander Coulson and Steven Liddle, Liddle Sheets Coulson P.C., Detroit, MI; and Nathaniel James Weimer, Tewksbury & Kerfeld, P.A., Minneapolis, MN, for Plaintiff Kyle Feldman.

Jeffrey P. Justman, Andy Taylor, and Anderson Tuggle, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendant Star Tribune Media Company LLC.

---

Plaintiff Kyle Feldman is a startribune.com subscriber. On behalf of a class of subscribers, Mr. Feldman alleges that Star Tribune Media Company, the website's owner, violated the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by sharing subscribers' video-viewing history with Facebook using a code analytics tool called Facebook Pixel. The parties agreed to a $2.9 million class settlement. The settlement was preliminarily approved on February 5, 2024, and since then, no objections have been filed.

Mr. Feldman has now filed an unopposed Motion for Final Approval of Class Action Settlement, ECF No. 69, and an unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards, ECF No. 65. As required by Federal Rule of Civil Procedure 23(e)(2), a hearing on these motions was held on May 20, 2024.

The motions will be granted.  Plaintiff's submissions and other materials in the case file establish that: (1) class certification is appropriate under Rules 23(a) and 23(b)(3); (2) the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2); and (3) the requested attorneys' fees and class-representative payment are reasonable.

I

The Star Tribune developed, owns, and operates startribune.com.  Compl. [ECF No. 1] ¶¶ 2, 7, 12.  The website offers an array of video content.  *Id.* ¶¶ 2, 13.  The Star Tribune monetizes its website, in part, by collecting and disclosing subscriber information to Facebook.  *Id.* ¶ 20.  Mr. Feldman alleges the website used a code analytics tool called "Facebook Pixel," which tracks the actions of subscribers, such as the pages or videos they view.  *Id.* ¶¶ 21–22.  If an individual watches a video on startribune.com while logged in to Facebook on the same web browser and device, the individual's Facebook ID and a URL of the video the individual watched "are simultaneously sent to Facebook via Facebook Pixel."  *Id.* ¶¶ 23, 48.  The viewer's Facebook ID is sent to Facebook via a "cookie."  *Id.* ¶ 25.  At the same time, the "PageView" component of Facebook Pixel discloses to Facebook the URL a viewer accessed.  *Id.* ¶ 26.  If Facebook, the Star Tribune, or perhaps someone else were to enter the video URL and the appended-Facebook-ID into a web browser, the Complaint alleges, it would be possible to identify which Star Tribune video a particular user had viewed.  *Id.* ¶¶ 27, 29–30.

Mr. Feldman subscribes to startribune.com and has a Facebook account, "which he is perpetually logged into."  *Id.* ¶¶ 2, 44.  His Facebook profile contains his name.  *Id.* ¶ 47.  Since becoming a startribune.com subscriber in 2011, Mr. Feldman regularly has watched

videos on startribune.com while logged into his Facebook account on the same web browser and device. *Id.* ¶ 48. Each time Mr. Feldman has watched a video on startribune.com, the Star Tribune disclosed his Facebook ID and the URL of the video that he viewed to Facebook via Facebook Pixel. *Id.* ¶¶ 26, 49. Mr. Feldman alleges that the Star Tribune violated the VPPA each time it knowingly disclosed his Facebook ID and viewed-video URLs (and those of would-be class members) to Facebook via Facebook Pixel. *Id.* ¶¶ 4, 64–71.

The Star Tribune denies Mr. Feldman's allegations and admits to no liability in this action or in conjunction with the proposed settlement. Pl.'s Mem. in Supp. [ECF No. 71] at 7.[1]

Mr. Feldman seeks to represent a class of similarly situated website subscribers. The class is defined as:

> [A]ll persons who reside in the United States, and who, from July 7, 2020, to and through the Preliminary Approval date: (1) have or had a Facebook account; (2) also have or had a digital subscription to the *Star Tribune*, or a home delivery subscription to the *Star Tribune* that includes digital access; and (3) who viewed videos on Defendant's Website.[2]

---

[1]     Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

[2]     Excluded from the Settlement Class are (1) any judge or magistrate judge presiding over this action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. Pl.'s Mem. in Supp. at 8 n.2.

*Id.* at 8 (alteration and footnote in original); ECF No. 57 at 24.  After preliminary approval was granted, notice was delivered to over 300,000 potential class members and thousands of claims have been received.  Pl.'s Mem. in Supp. at 6, 12.

On August 2, 2023, the parties engaged in a day-long settlement conference before Magistrate Judge Leung.  *Id.* at 7–8.  The parties exchanged documents and information "of similar scope to that which would have been provided in formal discovery," so that each party could adequately assess the strengths and weaknesses of the claims and defenses. *Id.* at 15.  After nearly ten hours of arm's length negotiations, the parties reached an agreement.  *Id.* 8.  The Star Tribune's insurance carrier subsequently agreed to tender payment.  *Id.*

The settlement provides both monetary and prospective relief.  The Star Tribune agreed to create a settlement fund of $2.9 million.  *Id.* at 9.  From that fund, the settlement administrator will pay all approved claims made by settlement class members on a *pro rata* basis, administrative expenses, an incentive award to the class representative, and any fee award to class counsel.  *Id.*  Any uncashed checks or unprocessed electronic payments will be redistributed to settlement class members who did cash checks or process payments in the initial distribution.  *Id.*  If a secondary distribution is not feasible, uncashed funds will revert to the Minnesota Justice and Democracy Centers or another non-sectarian, not-for-profit organization(s) recommended by class counsel and approved by the Court.  *Id.* at 9–10.

The Star Tribune also agreed to suspend operation of Facebook Pixel "on any pages on Defendant's Website that both include video content and have a URL that substantially

identifies the video content viewed"[3] within 45 days of the order granting preliminary approval. *Id.* at 10. At the final fairness hearing, the Star Tribune confirmed that it has suspended operation of Facebook Pixel on its website in accordance with the terms of the settlement.

On February 5, 2024, the Court granted preliminary approval of the proposed class action settlement. ECF No. 64. In the preliminary approval order, the Court: (a) conditionally certified this matter as a class action, including defining the class, *id.* ¶ 9; (b) appointed Mr. Feldman as the class representative and appointed Nicholas A. Coulson and Steven D. Liddle of Liddle Sheets Coulson P.C. and Nathaniel J. Weimer of Tewksbury & Kerfield, P.A., as class counsel, *id.* ¶ 8; (c) preliminarily approved the settlement agreement, *id.* ¶ 2; (d) approved the form and manner of notice to the settlement class, *id.* ¶ 12; (e) set deadlines for opt-outs and objections, *id.* ¶ 16; (f) approved and appointed the settlement administrator, *id.* ¶ 13; and (g) set the date for the final fairness hearing, *id.* ¶ 5.

On April 5, 2024, pursuant to the notice requirements set forth in the settlement agreement and in the February 5 preliminary approval order, the conditionally certified settlement class was notified of the terms of the proposed settlement agreement, of the right of settlement class members to opt-out, and the right of settlement class members to object

---

[3] The Star Tribune's suspension agreement endures "unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Minnesota, or a Minnesota state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed to Facebook." Pl.'s Mem. in Supp. at 10.

to the settlement agreement and to be heard at the final fairness hearing.  ECF No. 73 ¶¶ 9–10.  The settlement administrator will cause reminder email notices to be sent to all prospective class members for whom no claim form or request for exclusion was received and who did not unsubscribe to settlement-related emails.  *Id.* ¶ 10.

The final fairness hearing was held on May 20, 2024 to determine, among other matters: (1) whether the conditionally certified settlement class should be certified; (2) whether the terms of the settlement agreement are fair, reasonable, and adequate for the release of the claims contemplated by the settlement agreement; (3) whether the requested attorneys' fees and class-representative payment are reasonable; and (4) whether judgment should be entered dismissing this action with prejudice.

"The threshold issue is whether the settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and at least one prong of Rule 23(b).  Upon determining that the class satisfies Rule 23, the Court will then analyze the Settlement itself, as well as any relevant objections.  Finally, the Court will address the award of payments to class representatives and attorneys' fees."  *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-md-2247 (ADM/JJK), 2012 WL 2512750, at *3 (D. Minn. June 29, 2012), *aff'd*, 716 F.3d 1057 (8th Cir. 2013).

## II

### *Class Certification*

As our Eighth Circuit Court of Appeals has explained:

> A district court may not certify a class until it "is satisfied, after a rigorous analysis," that Rule 23(a)'s certification prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 351(2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted). Consistent with the Supreme Court's premise that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *Falcon*, 457 U.S. at 160, after initial certification, the duty remains with the district court to assure that the class continues to be certifiable throughout the litigation, *Petrovic*, 200 F.3d at 1145. *See also Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) ("The district court's duty to assay whether the named plaintiffs are adequately representing the broader class does not end with the initial certification . . . .").

. . . .

Though the Supreme Court has not articulated what, specifically, a "rigorous analysis" of class certification prerequisites entails, at a minimum the rule requires a district court to state its reasons for certification in terms specific enough for meaningful appellate review. "[S]omething more than mere repetition of [Rule 23(a)'s] language [is required]; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011) (internal quotation marks omitted) (alteration omitted); *accord Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam) ("[W]hen certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23.").

*In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017);

*see Kruger v. Lely N. Am., Inc*., No. 20-cv-629 (KMM/DTS), 2023 WL 5665215, at *2 (D. Minn. Sept. 1, 2023) ("To certify a Settlement Class for the purpose of settlement the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied." (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)));

*see also In re Pork Antitrust Litig*., No. 18-cv-1776 (JRT/JFD), 2022 WL 4238416, at *3

7

(D. Minn. Sept. 14, 2022) ("Before granting final approval to a class settlement, the Court must ensure that the class proposed by the settlement meets the Rule 23 requirements to proceed as a class."). Here, a close review of the materials submitted in support of the unopposed motions and other relevant materials in the case file shows that the proposed class satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3), making certification appropriate.

(1) *Numerosity.* A class cannot be certified unless it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specific rules govern the required size of a class, and what constitutes impracticability depends upon the facts of each case." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (cleaned up); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) ("No arbitrary rules regarding the necessary size of classes have been established."). "The most obvious factor, of course, is the number of potential class members," and "[o]ther relevant factors include the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor that sheds light on the practicability of joining all putative class members." *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) (citing *Paxton*, 688 F.2d at 559–60); *see also Portz*, 297 F. Supp. 3d at 944 ("Practicality of joinder depends on such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims.") (quoting source omitted). Courts in the Eighth Circuit have routinely found classes smaller than this

meet the numerosity requirement of Rule 23(a)(1).  *See Murphy v. Piper*, No. 16-cv-2623 (DWF/BRT), 2017 WL 4355970, at *3 (D. Minn. Sept. 29, 2017) (citing William B. Rubenstein, *Newberg on Class Actions* § 3.12 (5th ed. 2017 Update)).

As of the date of Mr. Feldman's motion for final approval, more than 5,760 claims had been submitted.  Pl.'s Mem. in Supp. at 12.  The claims deadline is July 5, 2024.  *Id.* It seems reasonable to assume more claims may be filed by then.  The opt-out and objection period passed on May 6, 2024, with only two opt-outs and no objections.  *Id.*  With more than 5,000 claims already submitted, the class easily satisfies the numerosity requirement of Rule 23(a)(1).

(2) *Commonality.*  The second prerequisite for class certification is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires a showing that class members 'have suffered the same injury.'"  *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571 (8th Cir. 2015) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)).  To satisfy commonality, the class members' "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Mr. Feldman's current motion rests on his preliminary approval briefing.  Pl.'s Mem. in Supp. at 20.  There, he contended that determining the truth or falsity of VPPA violations as to class members raises several common questions, such as "(a) whether Defendant is a video tape service provider within the meaning of the statute; (b) whether

the information Defendant allegedly disclosed to Facebook constitutes PII under the statute; and (c) whether Defendant knowingly disclosed the information to Facebook." ECF No. 57 at 26.  Mr. Feldman expects that, if litigation were to continue, the Star Tribune would argue that "there are certain factors that undermine commonality, such as the way in which class-members interacted with Defendant's website, class-member's browser settings, how they use Facebook, and any consent they may or may not have given to Facebook. *Id.* These individualized defenses do not undermine commonality.  Here, class members all suffered the same alleged injury.  The evidence at trial would focus on the Star Tribune's conduct: whether it knowingly disclosed members' personally identifiable information in violation of the VPPA.  The class meets the commonality requirement of Rule 23(a)(2).

(3) *Typicality.*   Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The Rule "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Paxton*, 688 F.2d at 562 (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).  Typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Typicality is "easily met" here.  The class representative, Mr. Feldman, has a claim typical of any class member—*i.e.*, that the Star Tribune knowingly disclosed his personally identifiable information to Facebook in violation of the VPPA.  And his claim arises from the same course of conduct as all other class members' claims—the Star Tribune's implementation of Facebook Pixel on startribune.com.

(4) *Adequacy.*  A class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The party moving for certification bears the burden to prove that [he] will adequately represent the class," and "[t]he district court must decide whether Rule 23(a)(4) is satisfied through balancing the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 835 (8th Cir. 2010) (cleaned up). To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). "This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel." *Taqueria El Primo LLC v. Ill. Farmers Ins.*, 577 F. Supp. 3d 970, 993 (D. Minn. 2021).

Mr. Feldman is an adequate representative.  He initiated this suit and has participated in the litigation by "spen[ding] a significant amount of time assisting his counsel, providing information regarding his Star Tribune subscription and Facebook

account, providing relevant documents as required, and assisting with settlement negotiations." ECF No. 57 at 19.  Class counsel, Steven D. Liddle and Nicholas A. Coulson of Liddle Sheets Coulson P.C., and Nathaniel J. Weimer of Tewksbury & Kerfeld, P.A., who are experienced in complex litigation, also are adequate under Rule 24(a)(4). Mr. Liddle is a managing partner of the firm and has been practicing since 1991.  ECF No. 58 at 11 (Firm Resume).  He taught complex litigation at Michigan State University Detroit College of Law and "has successfully represented hundreds of thousands of individuals in environmental claims against corporate and municipal entities, recovering many millions of dollars."  *Id.*  Mr. Coulson is a partner and has been practicing since 2013.  *Id.* at 13. Mr. Coulson has been appointed to represent certified classes in as many as twenty-one cases.  ECF No. 58 ¶ 25.  Mr. Weimer graduated *cum laude* from the University of Minnesota Law School in 2013, has been an attorney at Tewksbury & Kerfeld since 2020, and primarily practices civil litigation, including complex litigation.  ECF No. 72 ¶ 6. Mr. Weimer served as local counsel, and his "efforts were important in pressing this case to a successful resolution."  *Id.* ¶ 7.  Class counsel has shown an ability and willingness to prosecute the action competently from filing the class-action Complaint in July 2022, to successfully opposing the Star Tribune's motion to dismiss, to negotiating a favorable settlement for the class.

(5) *Predominance and superiority.*  To obtain certification under Rule 23(b)(3), Plaintiff must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members and [(2)] that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "pertinent" matters to these inquiries include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (citing Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1777, at 518–19 (2d ed. 1986)).

At the final fairness hearing, Mr. Feldman argued persuasively that this class meets Rule 23(b)(3)'s requirements. First, this is a quintessential case where common issues predominate: each member is similarly situated, suffered the same harm, and is entitled to the same relief. Second, this case is one where each member's potential award would likely be too small to merit individual litigation, and the class vehicle makes it possible for class members to pursue their claims. *See DeBoer*, 64 F.3d at 1175 (describing one of the two "purposes behind class actions" as "providing small claimants with a means of obtaining redress for claims too small to justify individual litigation"). An agreement that disposes of hundreds or thousands of class members' claims in one settlement is the superior method of resolving the case. Other classes—with claims nearly identical to the ones here—were found to have met Rule 23's requirements for final approval. *See* Final Judgment and

13

Order of Dismissal with Prejudice, *Ambrose v. Boston Globe Media Partners LLC*, No. 22-cv-10195-RGS (D. Mass. Sept. 8, 2023) (granting final approval of class settlement to a class of Boston Globe website subscribers also affected by Facebook Pixel); Final Judgment and Order of Dismissal with Prejudice, *Beltran et al. v. Sony Pictures Ent., Inc. d/b/a Crunchyroll*, No: 22-cv-04858 (N.D. Ill. Jan. 17, 2024) (same for a class of crunchyroll.com subscribers).

III

*Settlement Approval*

"A district court may approve a class action settlement only after determining that it is 'fair, reasonable, and adequate.'" *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting Fed. R. Civ. P. 23(e)(2)).  In assessing whether the proposed settlement is "fair, reasonable, and adequate," the Court considers: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citing *In re Uponor*, 716 F.3d at 1063).  The first factor is the most important consideration.  *Id.*

The class action settlement agreement includes several key terms.  It establishes a $2.9 million non-reversionary settlement fund, which will be used to pay for benefits to the settlement class, notice and administration costs, Plaintiff's service award, and attorneys' fees and costs.  ECF No. 55-1 ¶¶ 1.32, 2.  Class members who submit a timely and valid claim will receive a *pro rata* share of the net settlement fund after all settlement

administrative expenses.  *Id.* ¶ 2.1(b).  The settlement fund also pays the administration and notice expenses, attorneys' fees, reasonable expenses up to one-third of the total amount of the fund, and a Court-approved service award for Mr. Feldman as the class representative of $5,000.00.  *Id.* ¶¶ 8.1–8.3.  Any uncashed checks or unprocessed electronic payments will be redistributed to settlement class members who did cash checks or process payments in the initial distribution.  *Id.* ¶ 2.1(d).  If a secondary distribution is unfeasible, uncashed funds will revert to the Minnesota Justice and Democracy Centers or another non-sectarian, not-for-profit organization(s) recommended by class counsel and approved by the Court.  *Id.*  Lastly, in addition to the settlement's monetary value, the Star Tribune has agreed to suspend use of Facebook Pixel on its website, *id.* ¶ 2.2, which it represents it has already done.

Several considerations show that this settlement is fair and reasonable.  The settlement bears a reasonable relationship to the case's merits.  Though it was ultimately denied, the Star Tribune's Rule 12(b)(6) motion raised important arguments that warranted careful review and consideration.  *See Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023).  Litigation would have advanced to summary-judgment motions and possibly trial, which both would have proven complex and expensive.  The settlement seems more reasonable when one considers it was reached efficiently and with haste, in the early stages of litigation.  That enabled the parties to forgo substantial expense and it placed the benefits of the settlement in the hands of class members sooner.  And there has been no opposition to the settlement.  Pl.'s Mem. in Supp. at 6.  The claims administrator has sent individual email notice to 345,197 potential class members.  ECF

No. 73 ¶ 9.  Approximately 78% of class members were reached, which is considered a "high percentage," consistent with Federal Judicial Center guidelines.  *Id.* ¶ 11; Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited June 14, 2024) (listing 70–95% as a "high percentage" of a class).  The deadline by which to opt out or object was May 6, 2024; two class members timely requested exclusion from the settlement, and no class member objected.  Pl.'s Mem. in Supp. at 12; ECF No. 73 ¶ 16. The process that led to the settlement involved a settlement conference before Magistrate Judge Leung and arm's length negotiations, all but eliminating any possibility that the settlement was the product of collusion.  Pl.'s Mem. in Supp. at 7–8.[4]

IV

*Attorneys' Fees and Service Award*

Along with final approval, Mr. Feldman is seeking an award of attorneys' fees, litigation costs, and an incentive award.  ECF No. 65.  The motion should be granted because the fees sought are reasonable.

> "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The

---

[4]      At the final approval stage, courts often confirm that the settlement notice was effectuated as proposed.  *See Kruger v. Lely N. Am., Inc.*, No. 20-cv-00629 (KMM/DTS), 2023 WL 5665215, at *4 (D. Minn. Sept. 1, 2023).  On February 5, 2024, the Court found Mr. Feldman's proposed notice to be sufficient.  Mr. Feldman represents that "the Settlement Administrator effected the Notice protocol" as explained in the administrator's declaration, docketed as ECF No. 73.  Pl.'s Mem. in Supp. at 20–21.  The declaration, in turn, confirms the administrator, Kroll LLC, provided the notice in accordance with the Class Actions Fairness Act, and ultimately caused the email notice to be sent to 345,197 email addresses.  ECF No. 73 ¶¶ 4, 9.

Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 456 U.S. 886, 900 n.16 (1984). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8-9 (D. Minn. 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

*Kruger*, 2023 WL 5665215, at *5. Mr. Feldman seeks an attorneys' fees award of 32.6% of the $2,900,000.00 settlement fund, or $945,963.00. Courts in the Eighth Circuit consider several factors depending on the case's nature to evaluate a fee request's reasonableness. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 & n.7 (8th Cir. 2018) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974)); *see also In re Xcel Energy*, 364 F. Supp. 2d at 993. Applying several of these factors here shows that Mr. Feldman's request is reasonable.

(1) The benefit conferred on the class is substantial. (2) The settlement was reached with efficiency and haste, resulting in more benefit to the class, sooner. (3) Plaintiff's counsel faced a significant risk in pursuing the case. Mr. Feldman's lawyers have been litigating the case since July 2022, without payment or guarantee of payment. The Court ruled on Defendant's motion to dismiss in March 2023, and it presented difficult, close questions. *See* ECF No. 17; *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d

1006.  (4) The lawyers in the case—both representing Plaintiff and Defendant—are skilled. This conclusion is drawn safely from the quality of the lawyers' advocacy in this case, but it also is drawn from the Court's familiarity with the local lawyers and their standing in the legal community.  (5) The absence of objectors shows the class approves of the settlement and supports the requested fee award.  (6) The request for 32.6% is an award within the typical range approved in the Eighth Circuit.  *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts in the Eighth Circuit frequently award attorneys' fees between 25–36% of the settlement fund); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865–66 (8th Cir. 2017) (affirming 33% fee award); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving 36% fee award); *Khoday*, 2016 WL 1637039, at *17, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016) (awarding attorneys' fees of one-third of the settlement fund); *see also In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 998 (collecting cases awarding attorneys' fees of between 25–36% of common fund).  And (7) a lodestar cross-check of the fee award confirms its fairness. The lodestar amount is calculated by "multipl[ying] the number of hours reasonably expended by reasonable hourly rates."  *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019).  The attorneys expended 433.5 hours litigating the case at $950 per hour for Mr. Liddle with 61.4 hours, $750 per hour for Mr. Coulson with 322.2 hours, and $375 per hour for Mr. Ieraci with 31.5 hours and Mr. Spitzig with 18.4 hours.  ECF No. 68 ¶ 30. The lodestar is therefore 950 x 61.4 + 750 x 322.2 + 375 x 31.5 + 375 x 18.4, for a total of $318,692.50.  *Id.*  The requested fee of $945,963.00 divided by the lodestar results in a multiplier of 2.97.  *Id.*  A multiplier of 2.97 is within a reasonable range for a class

settlement in this Circuit. *See In re St. Paul Travelers Sec. Litig.*, No. 04-cv-3801 (JRT/FLN), 2006 WL 1116118, at *1–2 (D. Minn. Apr. 25, 2006) (approving a 3.9 multiplier); *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-cv-1038-DGK, 2021 WL 2188956, at *2–3 (W.D. Mo. May 28, 2021) (finding a 3.3 multiplier reasonable); *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, No. 18-cv-00368 (SMR/HCA), 2023 WL 8522980, at *7 (S.D. Iowa Nov. 30, 2023) ("The Eighth Circuit has found a multiplier as high as 5.3 to be reasonable."); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010) (describing a 2.26 multiplier as "modest"); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JD), 2022 WL 18959155, at *4 (D. Minn. Oct. 19, 2022) (describing a 1.38 multiplier as "well below" the range of multiplier found reasonable in similar contingent fee cases).

The requests for $20,703.07 in expenses and a $5,000.00 service award for Mr. Feldman are also reasonable. The requested expenses were incurred and represent routine litigation costs, including legal research fees, court fees, travel, and expert consulting. ECF No. 67 ¶ 32. Mr. Feldman's involvement in the case is worthy of the requested service award. *See id.* ¶ 33.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.    Plaintiff Kyle Feldman's Motion for Final Approval of Class Action Settlement [ECF No. 69] and adopt Plaintiff's Proposed Order [ECF No. 74] is **GRANTED**.

2.      Final certification of the Settlement Class is **GRANTED**.

3.      Plaintiff's Motion for Award of Attorneys' Fees, Litigation Costs, and Incentive Award [ECF No. 65] is **GRANTED**.

4.      Class counsel is awarded $945,963.00 in attorneys' fees.

5.      Class counsel is awarded $20,703.07 in reasonable litigation expenses.

6.      Class representative Kyle Feldman is awarded a service award of $5,000.00 for his service to the Settlement Class.

7.      Final approval of the methods and forms of notice provided to Class Members is **GRANTED**.

8.      This action is **DISMISSED with prejudice**.

9.      The Court shall retain jurisdiction over the subject matter and the parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 17, 2024                        s/ Eric C. Tostrud
                                                        Eric C. Tostrud
                                                        United States District Court